# UNITED STATES

## *v.*

# JULIO AYBAR ET AL.

San Juan, Criminal, No. 1299.

### On Motion to Quash Indictment.

War—Armistice.

    1. The armistice with Germany did not legally terminate the war.

General Demurrer—Not Considered.

    2. Where other demurrers raise all the points, a general demurrer will not be considered.

Lever Act—Conspiracy.

    3. The indictment is sufficient under the Lever Act if it alleges that certain men conspired to cause a food shortage and in order to carry this out certain ones of them did certain acts which produced that result.

Note.—For authorities passing on the decisions under the "Lever Act" (Act of August 10, 1917, amended in 1919), see note in 11 A.L.R. 1265.

    XI. Porto Rico.—35.

### United States v. Aybar.

Lever Act—Exceptions.

     4. Where an exception to an act of Congress is so expressed as to amount to a limitation of the offense, it must be negatived; otherwise not.

Different Offenses—Conspiracy.

     5. Where the charge is conspiracy, the allegation of separate acts by different defendants in aid thereof is proper.

Separate Offense—Two Courts.

     6. An unverified motion to quash cannot raise the point that the offense is triable elsewhere.

Lever Act—Employers.

     7. Quære, whether an employer can be indicted for furnishing inadequate support so that a strike necessarily results which limits the food supply.

Opinion filed June 3, 1920.

----

*Mr. Miles M. Martin,* District Attorney, for United States.

*Mr. H. G. Molina* and *Mr. L. Feliu* for defendants.

HAMILTON, Judge, delivered the following opinion:

In the case of United States v. Aybar et als. a motion has been filed and argument to quash the indictment found May 24, 1920. The discussion has assumed a wide and interesting range. Whether I can in decision go so far is the question I will take up, but I have been much impressed by the argument on both sides, and of course it goes without saying that I want to do justice to all parties, not only now, but in whatever

may be the further progress of the case. I will look at the motion to quash first, and then perhaps make some general remarks upon the matter supposed to be at issue.

It is necessary first to see exactly what the indictment is. Now of course I am going simply by the indictment. I cannot know anything of the facts. Personally of course I know what I see in the papers, but I mean judicially I am confined in the present discussion to the indictment itself. Now what is that? It alleges in the first count that Julio Aybar and certain eight or ten other men on or about April 27, 1920, did conspire among themselves and with divers other persons, a state of war then existing between the United States and the German Empire, to limit the facilities for transporting necessaries, to wit, food-stuffs, in the city of San Juan, Porto Rico. And that, in furtherance of and in order to effect the object of this conspiracy, José Cardona on or about the 30th of April fired with a pistol upon certain persons unloading the steamship Coamo, with the intention of intimidating and preventing the said persons from unloading the necessaries from the ship, thereby preventing the transportation and delivery of the same. That is mentioned as one of the acts done in pursuance of the conspiracy. Then follow allegations as to several other of the defendants; for instance, Pacheco Texidor, with the same object and in further pursuance of the same conspiracy, did attack certain two persons named who were bringing a load of milk to San Juan, this being done for the purpose of intimidating and preventing the said persons from transporting and distributing milk in the city, the said milk being a necessary of life and valuable foodstuff.

The next allegation is that Vazquez stopped the employees of

United States v. Aybar.

a firm of merchants, dealing in provisions, and prevented them from delivering and distributing foodstuffs in San Juan, and as a result caused them to desist from attempting such transportation. Again that Canales stopped the employees of another firm of merchants from receiving and transporting bags of flour from a storehouse, thereby preventing such delivery of flour, flour being a foodstuff and necessary to life.

All that is the first count.

The second count is not so much in detail, but alleges a similar, perhaps the same, conspiracy, by force, intimidation, and so on, to limit the facilities to transport and distribute foodstuffs, and in furtherance thereof all of them have continuously by threats, intimidation, and violence prevented the unloading of ships containing foodstuffs, and the transportation thereof, these being necessary to life in San Juan and Porto Rico, giving certain details, thereby causing a shortage in Porto Rico of foodstuffs. These are very serious allegations, and until there is a plea of some sort, some defense set up, I have to go upon these statements as the only ones before me, the only evidence indicating the facts of the case at all. They may be all wrong. If it is right for a judge to express a personal wish, it would be to prove that none of these things were done. But such are the allegations, and unless there is some defect in the statement of law connected with them it is a serious question. The object of the motion to quash is to show that there are such defects. Now we will take them up carefully. I will not state a general conclusion, but will examine them one by one.

1. The first reason for quashing the indictment is that as a matter of fact well known to the court no state of war exists between the United States and the German Empire. The court

United States v. Aybar.

doc's know that there is an armistice for purposes declared in the Armistice, but Congress on a certain date, the 17th of April I think it was, several years ago, declared war and no one has ever since declared peace. The court knows as a matter of public information that there is a difference of opinion between the President and the Senate as to what should be done in connection with the Treaty of Peace, and I have no wish to indicate any opinion in that connection; sitting judicially that is none of my business. But it is a fact that Congress has not set aside that declaration of war, and I cannot do it,—I wish I could; it must continue until the President and Congress agree on what shall be done in the matter. I shall have to refuse to consider this first ground as well taken.

2. The second ground is that the allegations set out in the indictment do not constitute an offense under the Lever Act. That is somewhat like a general demurrer, and I think the same point is reached by other grounds mentioned, so I will not consider it. It does not show wherein the indictment is defective. I cannot agree to this ground as stated.

3. The third ground is that the indictment fails to allege the nature of the supposed conspiracy, and how the defendants conspired to limit the facilities for transporting necessaries, and nowhere alleging facts showing, wherein the conspiracy was illegal. It seems to me that the indictment is good in this regard. What is alleged is that certain men conspired to cause a food shortage, putting it briefly, and that to carry this out certain ones did certain acts aimed to produce that result and which did produce that result. Now, is it necessary to state anything further? I hardly think so. Of course there may be some things stated in defense when it comes to pleading that

United States v. Aybar.

will show that this is not so, but as it stands it seems to me that the indictment is not subject to this particular objection.

4. The fourth ground is that the indictment does not negative the exceptions in the said Lever Act, failing to allege that the defendants are not farmers, etc. This point is more interesting than important. It has become the custom of Congress, for reasons which seem good to it, to make exceptions to public laws declaring a certain thing an offense or wrong, and then saying this shall not apply to so and so. The practice certainly cannot be commended, if I had a right to pass upon that point. The essence of a law is that it shall be general, but it is a point upon which I cannot pass. It is a settled custom. The only question is, Shall exceptions when made be set out in an indictment, or are they matters of defense? In the first place if these defendants are gardeners and dairymen and the like, that would be a good defense. From the argument made it would hardly seem likely that they are of that class, but as a matter of pleading the rule seems properly to be this,—that when Congress, in declaring an offense, makes a part of that declaration a limitation to certain persons or objects, the indictment must, in declaring such an offense, set out that the parties concerned are not within those limitations. That seems to be the rule. In other words, where Congress says the offense is in its essence limited, the fact that the defendants are not in the limitation must be a part of the indictment itself. When Congress declares a thing and then says this shall not apply to so and so, that is a matter of defense. Anyone can set up that he is not in the proviso, but the general rule has been declared, and what is in the proviso is merely a matter of defense. Reading the Lever Law it would seem that being a farmer would be a matter

of defense, and if the defense is set up it will be carefully tried.

5. That the indictment charges separate and distinct acts and offenses in the first count thereof, and sets out acts by different defendants which create offenses punishable differently and necessitate evidence of a different character to justify conviction. I think that this goes upon a wrong conception of the indictment. The indictment is not for an attempt to commit murder, or assault or anything of that sort,—in fact the court would have no jurisdiction of such matters. The indictment is for conspiracy to limit the food supply of this Island, and alleges that these things were done for that purpose and to that end. They may be punishable in another forum if they have been committed; and taking assault for murder, for instance, which is set out in regard to one man, the punishment in this court would be the punishment for conspiracy, and it would fall far below the proper punishment for murder. They are different offenses, and they would be separately triable.

6. That the defendant Cardona has been prosecuted in consequence of the acts set out in the indictment, and that the prosecution is pending before the district court of San Juan, I hardly think could come up on a motion to quash. There is no evidence, and the motion is not even verified. That would be a matter of defense in some form, but I hardly think that it comes up properly upon this motion to quash, unverified. It is interesting and I hope it will be set up in some proper manner, because this occurs to me,—it would be anomalous for two courts to be trying the same point. Suppose the local court finds that Cardona was not guilty of that offense, and suppose this court finds that he was guilty of that act. It would be an interesting and rather awkward situation. I am not prepared

United States v. Aybar.

at present to solve the point. At all events, I do not think it comes up under this motion.

Now these are the six grounds, and it seems to me that I will have to refuse the motion to quash.

The argument has covered a wider range than these law points, and extended to economic matters without the jurisdiction of this court. Federal courts are organized to try questions disputed between parties, generally relating to property, contract, or tort. Questions of status so far as justiciable come before local courts, and some on the border line of politics or economics are adjusted, if at all, by special tribunals. Remedies for some, such as strikes, have not yet been found. Only when the employer or employee violates the protection given by law to private rights, and under the Lever Act to some public rights, can courts interfere. This strike of longshoremen as such is not within my jurisdiction unless it interferes with such rights; but then it is. Whether justiciable rights of the strikers have been violated must be raised, if at all, in some other proceeding than the one now before me.

### On Motion to Quash Indictment.

It may not be improper to add this, while not upon the record, still upon the general situation. Neither the court nor any person in the community can be ignorant of public events. That is impossible; it is absurd. The court is inclined to think that the facts set out in the indictment grow out of a strike, and it may very well be that the court is more than willing to take this view of it, and that this strike has been declared by laborers, with the view of securing a better living

United States v. Aybar.

wage, better living conditions. I would be the last one, I hope, in this community or wherever I might live to oppose the raising of the condition of any human being. The question is, how that shall be done. If I have read history correctly, if my studies have been rightly directed at all, the conclusion is that civilization means the gradual amelioration of the condition of all men, the change from the time when government and institutions are for the benefit of a class to that when everyone receives the reward of his labor. I do not think that civilization means the rich who have inherited money shall be idle, and I do not think it means that laborers shall be idle and try to make their living by living off other people. The two extremes are equally forbidden by civilization.

The question is, how such result shall be brought about, and that is a question this court cannot solve except incidentally as involved in litigation to enforce laws. If there is any way of bringing an issue before this court, it would come to some conclusion which would be definite to the extent of its powers. I may go further and say this, that if a steamship company is knowingly paying or offering wages which are below living conditions surrounding people at the present time, and that as a result there is a shortage of necessaries to the community, that ships cannot be docked and cannot be loaded and unloaded, it would be a serious question whether or not the managers themselves would be guilty of infringing the Lever Act. The exact point in my mind is this. Suppose a steamship company refuses to supply facilities by which food can be unloaded and as a result it perishes unused at a time when it is needed, I take it that this would be a wasting of food under the Lever Act, and that the company or its managers would be indictable.

United States v. Aybar.

Now in point of fact the unloading has to be done not by machinery, but by human bodies; and if the company refuses to pay wages which will sustain those bodies, is it, or not, in effect doing the same thing as refusing to supply facilities for unloading, with the added result of injuring human beings? If so, it would seem to be violating the Lever Act. It might be said that, inasmuch as the company has secured unskilled labor, the condition supposed has not arisen, but how far can a company go in depriving labor, that part of the community which has built up the company's business, and by its skill can best aid the whole community, of its means of sustenance and bring in others to work temporarily? Is this within the Lever Act or is such discussion traveling outside of the purpose of that act?

It must be remembered that the United States, including Porto Rico, is one country, and legislation is had for the benefit of the people as a whole, and must not be construed so as to oppress any class. This particular question of steamship company's liability has not been argued, and I am not prepared to decide it. But it is worthy of consideration. There is no practical difficulty in enforcing the law against anyone who is guilty, for the arm of the Federal court reaches from Panama to Alaska and from Porto Rico to Hawaii. The only question is whether a person has broken the law.

The Federal court is the court of the sovereign in Porto Rico. It is designed to enforce the law against every violator, high or low. It is not designed to protect the guilty, whether laborer or capitalist, and indeed before this court there is no laborer and there is no capitalist. There is, strictly speaking, no public; for a court represents the whole people and knows nothing of classes. It is open to everyone who feels himself

United States v. Aybar.

aggrieved. If the district attorney does not think that the law and the facts extend to the steamship companies, that is persuasive, but I see no reason why the labor leaders cannot go before the grand jury and seek to have an indictment found, and if found it will be tried just as carefully as this indictment.

Now this of course is simply suggestive. I am not prepared to say that the law goes so far, but I can say that if anybody does anything that limits the bringing or distributing of food, he is guilty. I do not care whether he belongs to a corporation or a labor union, the crime is just the same, and it will be tried with the same impartiality.

In the charge to the grand jury I laid before them the question whether the shortage was due to laborers, steamship company, or merchants; so I am suggesting nothing new. The claims of labor are of a great and, so far as they keep within the law, very deserving, class of men, but they must be reached lawfully. The question after all is how to obtain rights and a living wage without violating law, and that is something which deserves equal consideration by laborers and by capitalists, as they are called. Neither has a right to violate the law. As said in the charge to the grand jury, the Lever Act as to transporting and distributing food in Porto Rico applies from the time the ship is moored to the dock until wagons deliver the goods to the consumers. Any interpretation short of embracing the two extremes, the bringer or transporter on the one side, and the family that consumes on the other, seems to me to be emasculating the act. It would not cover what one would suppose was in the mind of Congress at the time the act was passed.

I do not think it is necessary to say more at this time. So

United States v. Aybar.

far as the motion is concerned, it is denied, and an exception is allowed the defendants.